

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



WENDY C. THOMPSON a/k/a WENDY
COAKLEY-THOMPSON,

                    Plaintiff,

        v.

KENSINGTON PUBLISHING CORP.,

                    Defendant.

Dkt. No.

COMPLAINT AND JURY
DEMAND

U.S.D.C. S.D. N.Y.
CASHIERS

        Plaintiff, Wendy C. Thompson a/k/a Wendy Coakley-Thompson ("Coakley-Thompson"),

by and through her attorneys, for her complaint against defendant, Kensington Publishing Corp.

("Kensington"), alleges as follows:

### Parties

1.      Plaintiff Coakley-Thompson is a natural person residing in Herndon, Virginia.

2.      Upon information and belief, Defendant Kensington is a corporation organized

and existing under the laws of the State of New York, with its principal place of business located

in New York, New York.

### Nature of the Action

3.      Coakley-Thompson is bringing this action to enforce her copyrights in two self-

authored original works of fiction.

### Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over the claims in this action pursuant

to 28 U.S.C. §§ 1331 and 1338 because they arise under the Copyright Act, 17 U.S. C. § 101 *et*

*seq.*

- 1 -

NY_DOCS:621683.3

5.      Upon information and belief, venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a).

Background

*Coakley-Thompson's Work*

6.      Coakley-Thompson earned her Ph.D. in Education and is a masterful writer, journalist, and respected scholar who has established a precedence of addressing hard-hitting, controversial issues in her fiction, feature pieces and academic work.  Drawing from her diverse personal experiences, real world societal observations and scholarly research, Coakley-Thompson writes the type of compelling and challenging works that have positioned her on the fast track as one of the most profound new African American writers in the country. An experienced journalist and blogger, Coakley-Thompson formerly wrote for Examiner.com as the DC Publishing Industry Examiner and serves up publishing industry commentary in her blog, "Writing While Blog."

7.      In 2002 Coakley-Thompson self-published her original work of fiction, *Back to Life*.  Within months, she was approached by a literary agent and began receiving inquiries from publishers interested in offering her a publishing deal.

*The Agreement*

8.      Upon information and belief, Kensington is an independent publishing house located in New York, New York.

9.      On or about May 6, 2003, Coakley-Thompson entered into an agreement with Kensington (the "Agreement"), whereby Coakley-Thompson agreed to grant and assign to Kensington the exclusive right to print, publish, and sell hardcover and paperback copies of *Back*

- 2 -

*to Life* and a contemplated, untitled work of fiction (together, the "Works"). In exchange, Kensington agreed to pay Coakley-Thompson an agreed upon royalty for each sale of the Works.

10.     In or about 2004, Coakley-Thompson created the original work of fiction, *What You Won't Do For Love*. Kensington accepted the manuscript of *What You Won't Do For Love* as the untitled work of fiction contemplated in the Agreement.

*Limitation of Rights*

11.     The Agreement limited Kensington's rights to certain "print" copies of Coakley-Thompson's Works. It did not expressly assign any right to Kensington to digitize Coakley-Thompson's Works, or to otherwise create, publish or sell electronic copies of Coakley-Thompson's Works, nor did the parties agree to a royalty applicable to any such electronic copies.

12.     Indeed, pursuant to the Agreement, Coakley-Thompson retained the right to sell, license or dispose of all rights in the Works other than "book publication," including, without limitation, uses for "videodisc, phonographic reproduction, display, CD ROM, [and] interactive multimedia." Furthermore, the Agreement reserved any rights not expressly granted to Kensington, including rights that had not been invented or developed.

13.     Upon information and belief, at the time the parties entered into the Agreement, electronic books ("eBooks") consisted primarily of digitized text or multimedia stored and sold on CD-ROM. The market for digitized books available for download was limited and in the developmental stage. Upon information and belief, the market for fully digitized eBooks available for download and reading on e-reader devices was not fully realized until about 2007.

14.     Accordingly, by reserving all CD-ROM and multimedia uses for Coakley-Thompson, and by not expressly granting Kensington any rights with respect to electronic

NY_DOCS:621683.3

production or sale of the Works, the Agreement limited Kensington's rights in the Works to the contemplated physical print productions.

*Termination of the Agreement and Reversion of Rights*

15.     The Agreement provided Coakley-Thompson the right to give written notice of her desire terminate the Agreement if the Works were not in print and for sale five years from the date of first publication.  Following such notice, Kensington had a duty to respond within 60 days to inform Coakley-Thompson if it intended to print or reprint either of the Works.  If Kensington did not intend to print or reprint one of the Works, all rights granted in the Agreement would terminate and revert to Coakley-Thompson.

16.     On or about June 12, 2011, Coakley-Thompson informed Kensington that she considered her Works to be out of print and, as five years had passed from their publication and the Works were not in print, she was exercising her right to terminate the agreement.

17.     Upon information and belief, Kensington did not respond to the June 12, 2011 letter within 60 days.  Accordingly, the Agreement terminated and all rights in the Works reverted to Coakley-Thompson.

18.     In or about December 2011, Coakley-Thompson received a letter dated November 7, 2011 in which Kensington agreed to revert all rights in the Works to Coakley-Thompson.

*Coakley-Thompson's Copyrights*

19.     Coakley-Thompson is the sole owner of a valid, registered copyright in the text of *Back to Life* (the "*Back to Life* Copyright"), Registration Number TX0005665447 and/or TX0005489628.

20.     Coakley-Thompson is the sole owner of a valid, registered copyright in the text of *What You Won't Do For Love* (the "*What You Won't Do For Love* Copyright"), Registration Number TX0006335998.

*Kensington's Infringing Acts*

21.     On or about April 25, 2011, Coakley-Thompson discovered that Amazon.com ("Amazon") was offering for sale eBook versions of *Back to Life.*

22.     Upon information and belief, Amazon produced and distributed, or caused to be produced and distributed, at least one eBook version of *Back to Life.*

23.     The eBook version of *Back to Life* attributed publication of the eBook to Kensington.

24.     Upon information and belief, Kensington purported to license Amazon the right to produce and distribute eBook versions of *Back to Life* and distributed a copy of the *Back to Life* text to Amazon.

25.     Upon information and belief, Kensington provided Amazon and any downstream purchasers of the eBook version of *Back to Life* with false information concerning *Back to Life,* including, at least, the terms and conditions for use of the work.

26.     Upon information and belief, Coakley-Thompson informed Kensington that it was not authorized to produce, or distribute electronic copies of *Back to Life,* or to license such copies for sale.

27.     Upon information and belief, on or about May 6, 2011, Kensington editor, Selena James, informed Coakley-Thompson that Kensington had requested that Amazon cease offering *Back to Life* for sale as a Kindle eBook.

28.     Kensington acknowledged that the Agreement's grant of the right to "print, publish and sell" the Works did not include the right to create, publish, or license eBook editions of the Works by (i) complying with Coakley-Thompson's removal request; and (ii) its acceptance and agreement of Coakley-Thompson's termination of the Agreement based on the fact that the Works were not "in print" under the Agreement.

29.     On or about September 9, 2012, Coakley-Thompson discovered that Kensington had made available eBook versions of *What You Won't Do for Love* through Amazon, Barnes & Noble, Kobo, and the Sony eBookstore (collectively, the "eBook Vendors").

30.     Upon information and belief, the eBook Vendors produced and distributed, or caused to be produced and distributed, at least one eBook version of *What You Won't Do for Love*.

31.     The eBook version of *What You Won't Do for Love* attributed publication of the eBook to Kensington.

32.     Upon information and belief, Kensington purported to license the right to produce and distribute eBook versions of *What You Won't Do for Love* to the Vendors and distributed a copy of the *What You Won't Do for Love* text to the Vendors.

33.     Upon information and belief, Kensington provided the Vendors and any downstream purchasers of the eBook version of *What You Won't Do for Love* with false information concerning *What You Won't Do for Love*, including, at least, the terms and conditions for use of the work.

34.     Coakley-Thompson informed Kensington that it did not have the right to produce, license or distribute eBook versions of *What You Won't Do for Love,* and, upon information and

belief, Kensington agreed to cease making the eBook versions of the Works available for sale through Vendors.

35.    On or about September 30, 2013, Coakley-Thompson discovered that Kensington still offered an eBook version of *What You Won't Do for Love* as a "NOOK" book through the Barnes & Noble website.

36.    On or about October 1, 2013 and October 13, 2013, Kensington editor, Selena James, agreed to have the eBook version of *What You Won't Do for Love* removed from the Barnes & Noble website.

FIRST CLAIM FOR RELIEF
(Copyright Infringement - 17 U.S.C. § 501)

37.    Coakley-Thompson repeats the averments contained in paragraphs 1 through 36 as if set forth in full.

38.    Coakley-Thompson is the sole owner of the *Back to Life* Copyright and the *What You Won't Do for Love* Copyright (together, the "Coakley-Thompson Copyrights"). The Coakley-Thompson Copyrights are registered, valid and enforceable.

39.    Kensington has willfully infringed the Coakley-Thompson Copyrights.

40.    Coakley-Thompson is entitled to recover all damages sustained as a result of Kensington's unlawful conduct including (i) Kensington's profits, or (ii) Coakley-Thompson damages, or alternatively (iii) statutory damages.

SECOND CLAIM FOR RELIEF
(Contributory Copyright Infringement)

41.    Coakley-Thompson repeats the averments contained in paragraphs 1 through 40 as if set forth in full.

42.    One or more eBook Vendors infringed the Coakley-Thompson Copyrights.

NY_DOCS:621683.3

43.     Kensington knew or had reason to know that the eBook Vendors were infringing the Coakley-Thompson Copyrights.

44.     Kensington caused, or materially contributed to, the eBook Vendors' infringement of the Coakley-Thompson Copyrights.

45.     Coakley-Thompson is entitled to recover all damages sustained as a result of Kensington's unlawful conduct including (i) Kensington's profits, or (ii) Coakley-Thompson damages, or alternatively (iii) statutory damages.

THIRD CLAIM FOR RELIEF
(Providing False Copyright Management Information - 17 U.S.C. § 1202)

46.     Coakley-Thompson repeats the averments contained in paragraphs 1 through 45 as if set forth in full.

47.     Kensington knowingly provided false copyright management information concerning the Coakley-Thompson Copyrights, including, at least, false terms of use, to the Vendors and to downstream purchasers of the *Back to Life* and *What You Won't Do for Love* eBooks.

48.     Kensington provided false copyright management information with the intent to induce, enable, facilitate or conceal infringement of the Coakley-Thompson' Copyrights by itself, Vendors, and downstream purchasers.

49.     Coakley-Thompson is entitled to recover all damages sustained as a result of Kensington's unlawful conduct including (i) Coakley-Thompson damages and any additional profits of Kensington, or alternatively (ii) statutory damages for each violation.

WHEREFORE, Coakley-Thompson demands judgment:

- 8 -

A.      Awarding Coakley-Thompson her damages or Kensington's profits, or alternatively, at her election, statutory damages, as a result of Kensington's infringement of Coakley-Thompson Copyrights.

B.      Awarding Coakley-Thompson her damages or Kensington's profits, or alternatively, at her election, statutory damages, as a result of Kensington's provision of false copyright management information to Vendors and downstream purchasers.

B.      Awarding Coakley-Thompson her costs in this action, including her reasonable attorneys' fees pursuant 17 U.S.C. § 505; and

C.      Granting such other and further relief as this Court deems just and proper.

<u>Jury Trial Demand</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Coakley-Thompson hereby demands a trial by jury of all issues that are so triable.

Dated: New York, New York
       April 25, 2014

GARVEY SCHUBERT BARER

By: _____
       Maurice W. Heller, Esq. (MH7996)
       Ella Aiken, Esq. (EA5861)
       *Attorneys for Plaintiff*
       Twentieth Floor
       100 Wall Street
       New York, New York  10005
       (212) 935-4535 (EA)
       (212) 334-1278 (Fax)
       eaiken@gsblaw.com

NY_DOCS:621683.3